THOMAS L. BRADLEY and IDA ANN BRADLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bradley v. Commissioner
Docket No. 400-72.
United States Tax Court
T.C. Memo 1973-163; 1973 Tax Ct. Memo LEXIS 123; 32 T.C.M. (CCH) 793; T.C.M. (RIA) 73163; July 24, 1973, Filed *123 Philip N. Margolius, for the petitioners. Charles B. Norris, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION 2 The Commissioner determined a $250 deficiency in petitioners' 1969 income tax. At issue is whether the husband-petitioner incurred deductible business expenses in driving his automobile from home to work by reason of the fact that he carried certain equipment with him. FINDINGS OF FACT The parties have filed a stipulation of facts which is incorporated herein by this reference. Petitioners, husband and wife, resided in Oxon Hill, Maryland, when they filed their petition herein. During 1969, the year in issue, they resided in Forestville, Maryland. The husband ("petitioner") was employed during 1969 as a police officer for the National Park Service, and was assigned during that year to various places in the metropolitan District of Columbia area. The headquarters office which had jurisdiction over him was located at Hains Point in the District of Columbia, and a substation was at Greenbelt, Maryland. The work hours for park policemen were divided into three shifts from 7:00 a.m. until 3:00 p.m., 3:00 p.m. to 11:00 p.m. *124 and 11:00 p.m. to 7:00 a.m. On these three shifts petitioner was supposed to report for duty 15 minutes prior to the hour for the shift to which he was assigned. These shifts are rotated every two weeks with petitioner being on a different shift for a two-week period. 3 On any particular day, petitioner's assignment might involve foot patrol or cruiser patrol. Among the areas to which petitioner was assigned for foot patrol during 1969 were Lafayette Park, Franklin Park, Meridian Hill, Montrose Park, Washington Monument, the Lincoln Memorial, the Jefferson Memorial, and the front or rear of the White House. He would learn on the preceding day of his assignment for any particular day. If the assignment were for foot patrol in a specified area, he would report for duty at that area to relieve the police officer who had the preceding shift, and if the assignment were for cruiser patrol, he would report for duty at the headquarters office at Hains Point or at the substation at Greenbelt, Maryland, depending upon the assignment. The majority of his assignments were for foot patrols. The distances from petitioner's home to his various work assignments varied from 12 to 20 miles. *125 Petitioner used his own automobile throughout 1969 in going from home to work and return. He wore his uniform to and from work assignments, and carried with him in his automobile the following equipment: (1) a so-called "riot bag", or duffel bag, two or three feet long and 15 to 18 inches in diameter, containing boots, raincoat, helmets, gas mask, night stick, and other items; (2) a briefcase approximately 17 or 18 inches long, 12 inches wide, and 4 inches deep, containing traffic code books for 4 Maryland and the District of Columbia, ticket books, steel measuring tape, a box of 38 caliber shells, and various other items; (3) another briefcase of equal size, containing an emergency blanket, a map, a general order book, and bandages; (4) a large metal flashlight; and (5) a "roll-a-tape" measuring device 18 inches long having a metal handle. The foregoing equipment weighed 51 pounds in the aggregate; all of it was necessary for the conduct of petitioner's duties, and petitioner was required to keep it with him at all times. It would not have been convenient or practical to carry such equipment by public transportation. When petitioner was on foot patrol, the equipment was kept *126 in his nearby parked car, and when on cruiser patrol, it was kept in the cruiser. Although petitioner had locker space at headquarters, it was not large enough to store the foregoing equipment, and generally did not have much more room than would be suitable for a second uniform. Moreover, the locker would not be a practical place in which to store the equipment, since on a majority of the days petitioner was required to report for foot patrol duty in areas other than headquarters. Petitioner lived approximately one block from a bus stop. Public transportation ran from that stop to 11th and Pennsylvania Avenue, N.W., or Lafayette Park, in downtown Washington. As a policeman in uniform, petitioner would have been able to travel free of charge on such public transportation. 5 By driving his own automobile petitioner generally required 20 to 25 minutes to drive to his various work assignments. The record does not contain any bus schedules nor was petitioner familiar with bus schedules or time in transit between Forestville, Maryland, and 11th and Pennsylvania Avenue or possibly Lafayette Park, particularly at the times when he would have to depart from his home in order *127 to be able to report for duty 15 mintues prior to his shift, or at the times for returning home when his shifts terminated. Also, some of his patrol assignments, for example, Meridian Hill, were not located within convenient walking distance from the terminal point of the Forestville bus in Washington, and petitioner would normally have had to take a second bus in order to reach his assignment, or to return to the downtown terminal point in Washington upon completion of his shift. Finally, there was no public transportation whatever from downtown Washington to Hains Point - a distance of about 1-1/2 miles - , and on those occasions when petitioner had to report to the headquarters office for duty, he would either have had to take a taxi or utilize the service of a cruiser if one were available and could pick him up. Petitioner's commuting time from his home to Hains Point was at least 2 hours less per day by commuting in his own automobile than by using public transportation, and was also substantially less when commuting to 6 other assignments. It was a great deal more convenient for petitioner to commute by private automobile than it would have been by use of public transportation.
*128 On petitioners' income tax return for 1969, a deduction of $1,200 was claimed for auto expense in respect of petitioner's use of his automobile for "Travel to work carrying work supplies". The deduction was computed on the theory that such travel consisted of 12,000 miles at the rate of 10 cents a mile. The Commissioner disallowed the deduction. At trial and on brief, petitioners claim 11,038 miles of business travel and seek a deduction of $1,103.80. 7 OPINION RAUM, Judge: This case is ruled largely by the Supreme Court's recent opinion in Fausner v. Commissioner, U.S. (June 25, 1973), which makes clear that commuting expenses incurred in using one's own automobile are not deductible merely because the taxpayer carries heavy equipment with him if he would have driven his automobile in any event. See Rev. Rul. 63-100, 1963-1 C.B. 34. There remains for us merely the factual determination whether petitioner would have driven his own car in preference to public transportation if he were not required to have his equipment with him. Petitioner testified that he would have used public transportation in such circumstances. Although the matter may not be completely *129 free from doubt we are not convinced by his testimony. He was unfamiliar with bus schedules; his shifts could begin or end at late or early hours and we have no way of knowing whether there was any bus service at such hours or, if then available, the frequency of such service at those hours. On the days that petitioner was required to report to Hains Point, he would have had to spend at least two more hours in travel time were he to rely upon public transportation; and on other days he would have had to spend a substnatial amount of extra time in following such course, assuming 8 that public transportaiion would have been reasonably available to him at the hours that he might have had to resort to it. We cannot find on this record that petitioner would have utilized public transportation, and that he therefore used his automobile only because of the equipment that he was required to have with him. In the circumstances, Decision will be entered for the respondent.